UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____ x

JOHN B. OHLE, III,

        **Plaintiff,**

        v.

FRANKEL & ABRAMS, SANDOR FRANKEL,
and THE ESTATE OF STUART E. ABRAMS

        **Defendants**
_____ x

CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

## COMPLAINT

The complaint of plaintiff John Brewster Ohle, III ("Mr. Ohle"), a person of the full age of majority and resident of Cook County, Illinois, respectfully represents as follows:

### PARTIES

1. Made defendant herein is Frankel & Abrams, a New York partnership which, at all material times herein, was engaged in the practice of law and provided legal representation to its clients including the plaintiff. Frankel & Abrams' principal place of business is in New York, New York

2. Also made defendant herein is Sandor Frankel, a person of the full age of majority, and a principal in defendant Frankel & Abrams, and a licensed New York attorney who upon information and belief resides in New York, New York. His acts and omissions complained of herein were in the course and scope of his

employment and/or within the furtherance of his duties as a principal of defendant Frankel & Abrams.

3. Also made defendant herein is the Estate of Stuart E. Abrams ("defendant Abrams"). Defendant Abrams was a principal in defendant Frankel & Abrams and a licensed New York attorney, who also resided in New York. Defendant Abrams died on October 13, 2011 during his representation of Mr. Ohle. Defendant Abrams' estate is administered by administratrix Caroline Dowey and is responsible for the acts and omissions of defendant Abrams complained of herein. In addition, defendant Abrams' acts and omissions complained of herein were in the course and scope of his employment and/or in the furtherance of his duties as a principal of defendant Frankel & Abrams.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter under 28 U.S.C. 1332 because there is complete diversity of citizenship between plaintiff and all defendants and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Jurisdiction is proper in this state because defendant Frankel & Abrams, defendant Frankel and defendant Abrams all have transacted business in this state, including the representation out of which the claims presented herein arise.

5. Venue is proper in this Court pursuant to 28 U.S.C. 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district and because the defendants are subject to personal jurisdiction in this district.

## FACTS

6. In November 2008, Mr. Ohle was indicted by the United States Government in the United States District Court for the Southern District of New York, Case No. S3 08 Cr. 1109 (JSR).

7. On or about February 10, 2009, Mr. Ohle retained defendants Frankel & Abrams, Sandor Frankel and Stuart E. Abrams to represent him in the criminal proceedings. Defendant Abrams filed his notice of appearance in Mr. Ohle's case on March 25, 2009.

8. On April 1, 2010 Mr. Ohle was charged in a three-count Superseding Indictment that charged Mr. Ohle with conspiracy to commit wire fraud against J.P. Morgan Chase & Co. f/k/a Bank One and to defraud the Internal Revenue Service, in violation of 18 U.S.C. 371 (Count One), and related tax evasion, in violation of 26 U.S.C. 7201 (Counts Two and Three).

9. In May 2010, defendant Abrams proceeded to trial without assistance of any other counsel from defendant Frankel & Abrams. At trial, contrary to prior representations by defendant Abrams to Mr. Ohle, defendant Abrams failed to present a defense case. In fact, defendant Abrams failed to review Mr. Ohle's discovery, subpoena critical documents including IRS filings, obtain critical forensic accountant reports, interview and/or subpoena key witnesses and hire experts to testify at Mr. Ohle's trial.

10. Defendant Abrams' negligent failure to prepare ultimately resulted in defendant Abrams' failure to present a defense on Mr. Ohle's behalf. As a direct result of defendant Abrams' negligence in this regard, on June 3, 2010, Mr. Ohle was convicted on all three counts.

11. On September 17, 2010, defendant Abrams was notified that the government failed to turn over 116 boxes of evidence from Jenkens & Gilchrist prior to Mr. Ohle's trial.

12. Due to defendant Abrams' continuing failure to review Mr. Ohle's discovery, Mr. Ohle, his wife and his mother-in-law flew to New York to personally review the 116 boxes from Jenkens & Gilchrist. Defendant Abrams' failure to prepare for Mr. Ohle's trial effectively shifted the responsibility for reviewing this newly-presented evidence to Mr. Ohle. Due to his own personal efforts, Mr. Ohle identified, copied and then delivered to defendant Frankel & Abrams six banker boxes of relevant and/or exculpatory documents that proved his actual innocence, including IRS filings, emails between the "HOMER" transactional partners J.P. Morgan Chase, Deutsche Bank, Jenkens & Gilchrist and Kenneth A. Brown.

13. On November 11, 2010, as a result of these documents discovered by Mr. Ohle, defendant Abrams was forced to admit to Mr. Ohle that he had failed to review Mr. Ohle's discovery prior to his trial. Defendant Abrams admitted in an email to Mr. Ohle, "We are having a lot of problems with Concordance disks. I don't know if this is due to anything the government did, or merely a result of [defendant Frankel & Abrams'] technical shortcomings."

14. Despite this admission, defendant Abrams chose to protect defendant Frankel & Abrams and himself in his motion for new trial. Defendant Abrams failed to disclose to the Court that he was unable to search Mr. Ohle's discovery prior to trial and failed to review the government's post-trial document production from Jenkens & Gilchrist. Instead, defendant Abrams carefully selected thirty-three documents

from more than six banker boxes of relevant and/or exculpatory documents to include in his motion for new trial. These thirty-three documents were chosen based on defendant Abrams' belief that they were not included in his prior discovery databases. Many exculpatory documents were not submitted to the Court to conceal his failure to review Mr. Ohle's discovery and obtain critical IRS filings prior to trial.

15. Defendant Abrams also chose to blame the government for not producing documents that were the "missing piece of the puzzle," namely the Jenkens & Gilchrist documents. In his motion for new trial, defendant Abrams stated that "Documents drawn from the undisclosed boxes undermine the correctness of the jury's verdict, cutting across all aspects of the government's case." However, defendant Abrams failed to properly present critical IRS filings and to challenge the government's false assertion that such critical IRS filings were "drafts" and not exculpatory, failed to alert the Court in his motion for new trial that he had not reviewed Mr. Ohle's discovery prior to trial, failed to review the government's post-trial production of the Jenkens & Gilchrist documents, failed to review FBI interviews with direct exculpatory statements from key witnesses, failed to obtain a critical forensic accounting report, failed to investigate leads and failed to subpoena witnesses and documents for trial at trial. As a result, the Court simply found that the government had satisfied its duties and placed the onus on Mr. Ohle's counsel, namely defendant Frankel & Abrams and defendant Abrams to have identified and presented these exculpatory documents. Accordingly, defendant Abrams' motion for new trial was denied, and Mr. Ohle was sentenced to 60 months in prison.

16. Upon specific assurances from defendant Abrams that he would obtain critical IRS filings and other critical documents which were direct evidence of Mr. Ohle's actual innocence, Mr. Ohle retained defendant Frankel & Abrams to overturn and appeal his criminal conviction. Specifically, defendant Abrams represented that he would review Mr. Ohle's complete discovery and subpoena critical IRS filings that defendant Abrams had failed to do prior to Mr. Ohle's trial and were mislabeled as "drafts" by the government in its opposition papers to defendant Abrams' motion for new trial.

17. On March 29, 2011, Mr. Ohle reported to FPC Pensacola to begin serving a 60-month sentence while defendant Abrams sought to overturn his wrongful conviction related to his failure to review Mr. Ohle's discovery prior to his trial, his failure to interview key witnesses and his failure to present a defense at Mr. Ohle's trial. However, defendant Abrams stopped communicating with Mr. Ohle. Upon information and belief, defendant Abrams had previously been diagnosed with brain cancer and was receiving treatments and was hospitalized during this period of time. Due to health issues, defendant Abrams once again failed to review Mr. Ohle's discovery and failed to obtain the exculpatory IRS filings and other critical documents. Instead, defendant Abrams filed a direct appeal on Mr. Ohle's behalf which only challenged venue and the sufficiency of the evidence. Once again, defendant Abrams failed to inform the Court that he had not reviewed Mr. Ohle's discovery prior to his trial.

18. Due to defendant Abrams' failure to respond to Mr. Ohle's emails, phone calls and correspondence, Mr. Ohle had to engage attorney Michael Kelly to contact

defendant Frankel & Abrams related to Mr. Ohle's legal representation. Without communicating with Mr. Ohle, defendant Frankel & Abrams obtained two extensions to file Mr. Ohle's Reply Brief. On September 28, 2011, defendant Abrams contacted Mr. Ohle and advised him for the first time that he was suffering from brain cancer, only five days prior to oral argument on Mr. Ohle's direct appeal.

19. On October 3, 2011, defendant Abrams who was gravely ill appeared at oral argument on Mr. Ohle's direct appeal. Four days later, defendant Frankel advised Mr. Ohle that defendant Abrams would no longer represent him. Defendant Frankel further advised Mr. Ohle that he should retain replacement counsel to prevent prejudice from failing to be represented by legal counsel. Defendant Frankel & Abrams, however, pursuant to its agreement with Mr. Ohle, was required to continue its representation of Mr. Ohle.

20. On October 10, 2011, Mr. Ohle again engaged Mr. Kelly to contact defendant Frankel & Abrams related to its legal representation of Mr. Ohle. Defendant Frankel admitted that defendant Abrams was hospitalized four days following oral argument on Mr. Ohle's direct appeal. Mr. Kelly emailed defendant Frankel stating that defendant Frankel & Abrams should maintain and safeguard all correspondence, files and electronic data related to Mr. Ohle's representation, including, but not limited to, the Concordance database, electronic files on defendant Frankel & Abrams' computers, electronic files on defendant Abrams' computers, all correspondence including emails, and defendant Abrams' legal files related to Mr. Ohle's representation.

21. On October 11, 2011, defendant Frankel advised Mr. Kelly that defendant Abrams was the only attorney at defendant Frankel & Abrams with knowledge of Mr. Ohle's case (despite previous representations from defendant Frankel & Abrams to the contrary) and with the requisite expertise to handle Mr. Ohle's legal representation. Accordingly, defendant Frankel & Abrams refused to continue its legal representation of Mr. Ohle in direct breach of its obligations under its engagement letter. Further, defendant Frankel & Abrams failed to return Mr. Ohle's legal fees which hampered Mr. Ohle's efforts to obtain replacement legal representation.

22. On October 12, 2011, defendant Abrams fell into a coma, dying on October 13, 2011.

23. On October 20, 2011, the Second Circuit Court of Appeals denied defendant Abrams' direct appeal of Mr. Ohle's conviction by Summary Order and Judgment, having never been alerted to defendant Abrams' failure to review Mr. Ohle's discovery prior to trial and the resulting ineffective assistance of counsel.

24. Mr. Ohle fulfilled all of his legal duties under his contract with defendant Frankel & Abrams including paying legal fees to defendant Frankel & Abrams of at least $800,000. Defendant Frankel & Abrams, however, refused to honor its legal obligations under its contract with Mr. Ohle, improperly withdrawing as Mr. Ohle's counsel, without his consent, on November 14, 2011. Defendant Frankel & Abrams failed to return Mr. Ohle's legal fees while refusing to continue its legal representation of Mr. Ohle as previously agreed. As a result of defendant Frankel &

Abrams' wrongful actions, Mr. Ohle was unrepresented during this critical period which resulted in immeasurable harm to Mr. Ohle.

25. Mr. Kelly contacted defendant Frankel requesting all communications related to defendant Abrams' representation of Mr. Ohle as well as his legal files, electronic data and Concordance discovery databases. Defendant Frankel failed to produce the entire requested production. Instead, Mr. Ohle was provided with certain emails between defendant Abrams and the government and/or Mr. Ohle.

26. As a result of Mr. Ohle's review of these emails, Mr. Ohle discovered that defendant Abrams had been ill throughout his representation, had failed to review his discovery, had failed to investigate leads and had failed to interview witnesses which would have proved Mr. Ohle's actual innocence. Further, Mr. Ohle learned that defendant Abrams failed to obtain investigation reports, failed to obtain forensic accounting reports and failed to hire experts due to being overwhelmed by the discovery issues in Mr. Ohle's case and his medical conditions (which were undisclosed to Mr. Ohle).

27. Mr. Ohle remained unrepresented by legal counsel as a result of defendant Frankel & Abrams' breach of contract until October 2012 when Mr. Ohle was finally able to retain attorney Priya Chaudhry to review his discovery for the first time and pursue his post-conviction habeas motion ("2255 Motion") based on defendants' ineffective assistance of counsel.

28. Upon Ms. Chaudhry's review of defendant Abrams' discovery databases, Ms. Chaudhry discovered that Mr. Ohle's discovery was in a format that was not reviewable. As a result, on January 18, 2013, Ms. Chaudhry filed Mr. Ohle's 2255

Motion without being able to review Mr. Ohle's discovery [see Case No. 1:13-cv-00450-JSR, Docket Nos. 1-4].

29. Ms. Chaudhry sought, and the District Court granted, an order compelling the government to produce a copy of Mr. Ohle's discovery to Ms. Chaudhry as well as leave to file a supplemental brief in support of Mr. Ohle's 2255 Motion. But after reviewing the new discovery production from the government, Ms. Chaudhry determined that Mr. Ohle's discovery was corrupted and could not be reviewed. Ms. Chaudhry never reviewed Mr. Ohle's discovery but filed her supplemental brief on March 26, 2013 based on legal arguments that defendant Abrams failed to raise in his representation of Mr. Ohle [Docket No. 8].

30. As a result of defendant Abrams' failure to review his discovery and alert the Court of the issues related to his review of Mr. Ohle's discovery, Mr. Ohle retained yet another attorney Hiram C. Eastland to attempt to review the government's discovery production and to review defendant Abrams' multiple failures to investigate critical aspects in Mr. Ohle's defense of his criminal charges.

31. Before Mr. Eastland's legal representation of Mr. Ohle began, Ms. Chaudhry appeared at oral argument on Mr. Ohle's 2255 Motion where she summarized the core issue in Mr. Ohle's 2255 Motion, "Mr. Ohle's claims mostly hinge, aside from the legal arguments, around an ineffective assistance by failure of [defendant Abrams] to pursue several avenues of both investigation and trial presentation that would have had an effect on the outcome of the case. At the core of this, as the Court has heard, was an absence of a meaningful review of the discovery provided by the

government in this case [see Transcript of oral argument on Ohle's 2255 Motion, August 9, 2013, Docket No. 22, p. 2]."

32. Further, Ms. Chaudhry also stated during oral argument that defendant Abrams admitted, both at hearings before the Court and in his written submissions, that he had failed to review Mr. Ohle's discovery, that communications between Mr. Ohle and defendant Abrams made clear (in addition to communications between defendant Abrams and the government) that defendant Abrams had never reviewed a Concordance database before, and that Ms. Chaudhry had personal knowledge that defendant Abrams' discovery databases were in a format that was not reviewable [Id., p. 2-4]. Defendant Abrams also repeatedly told attorney David Hammer that he was "the most exhausted I've ever been in my life. I never felt like this before [Id., p. 15]."

33. Ms. Chaudhry concluded her oral argument, "For these reasons there's a man who is sitting in prison serving a sentence who had an entire trial with a lawyer [defendant Abrams] who was compromised [by his health issues] and never actually reviewed the discovery ... but we know at least a few leads without my having to go through it all to say there would have been a different outcome ... [Id., p. 8-9]."

34. On September 11, 2014, Mr. Eastland filed a Motion to Permit Discovery which set forth multiple failures of defendant Abrams related to his representation of Mr. Ohle and which focused on defendant Abrams' failure to obtain and present critical IRS filings and other exculpatory information [see Docket Nos. 29, 31]. The motion also addressed the failure of defendant Frankel & Abrams to maintain and produce Mr. Ohle's legal files, including its computers and electronic data, which are

essential to Mr. Ohle's ineffective assistance of counsel claims. Once again, defendant Frankel caused further harm to Mr. Ohle through his wrongful actions which resulted in further legal costs, asset forfeitures and Mr. Ohle's continuing incarceration.

35. On January 30, 2013, following Ms. Chaudhry's filing of Mr. Ohle's 2255 Motion, Mr. Eastland notified defendant Estate of Stuart E. Abrams of Mr. Ohle's claims: "Mr. Abrams' inactions and omissions include, for example, failing to adequately prepare for trial or to bring out evidence at trial that would have exculpated Mr. Ohle by never interviewing or subpoenaing a number of witnesses . . . And he unreasonably failed to act on specific investigative direction provided by Mr. Ohle that deprived Mr. Ohle of significant documentary testimonial evidence at trial that would have exculpated him."

36. One notable example of such inactions and omissions by defendant Abrams became blatantly clear ten months later when Mr. Ohle's supervisor at J.P. Morgan Chase testified in civil litigation in Ecetra N. Ames v. J.P. Morgan Chase et al, Civil Action No. 11-440, Civil District Court-Parish of Orleans, State of Louisiana.

37. On December 2, 2013, Mr. Dye testified in his civil deposition that J.P. Morgan Chase was not entitled to fees in its "HOMER" tax shelter transactions beyond those set forth in the Services Agreements between law firm Jenkens & Gilchrist and J.P. Morgan Chase. This deposition testimony alone proved Mr. Ohle's actual innocence and was also consistent with statements made by J.P. Morgan Chase employees, Mr. Dye and legal counsel John Kramer, to the FBI prior to Mr. Ohle's trial. However, defendant Abrams failed to contact Mr. Dye, Mr. Kramer or other former employees

prior to Mr. Ohle's trial, failed to alert Mr. Ohle of these exculpatory statements to the FBI, and failed to subpoena these witnesses to testify at Mr. Ohle's trial. Instead, Mr. Ohle was convicted of defrauding his former employer J.P. Morgan Chase on an inference that J.P. Morgan Chase was entitled to two percent on each of its tax shelter transactions infamously named "HOMER."

38. After six months of discussions and then litigation related to J.P. Morgan Chase's attempt to shield this exculpatory evidence from the U.S. District Court for the Southern District of New York, Mr. Ohle obtained an order from the Civil District Court for the Parish of Orleans, State of Louisiana [see Ecetra N. Ames v. J.P. Morgan Chase et al, Case No. 11-440, CDC-Orleans Parish, Louisiana], allowing Mr. Ohle to submit exculpatory documents and deposition testimony to the U.S. District Court for the Southern District of New York.

39. On June 30, 2014, Mr. Eastland filed his Motion for Leave to File a Supplemental Brief in Support of Mr. Ohle's 2255 Motion [see Case No. 1:13-cv-00450-JSR, Docket No. 27]. The Court granted the motion on July 6, 2014.

40. On July 22, 2014, Mr. Eastland requested that defendant Frankel turn over all of defendant Frankel & Abrams' files relating to Mr. Ohle within 14 days so that he could properly prepare Mr. Ohle's Supplemental Brief in Support of Mr. Ohle's 2255. Mr. Eastland further requested information known to defendant Frankel & Abrams concerning defendant Abrams' medical condition. Defendant Frankel refused to respond to Mr. Eastland's letter and failed to turn over this important information. Once again, defendant Frankel's actions were designed to impede Mr. Ohle's ability

to prosecute his ineffective assistance of counsel claims and to obtain justice in his criminal proceedings. As a direct result of defendant Frankel's wrongful actions, Mr. Eastland filed the aforementioned Motion to Permit Discovery [see Docket Nos. 29 and 31], resulting in further legal costs and additional delays to Mr. Ohle.

41. Mr. Eastland was forced to seek an extension from the Court to file Mr. Ohle's Supplemental Brief due to the failure of defendant Frankel and the government to turn over discovery needed to file a complete brief. Defendant Frankel continued to refuse to produce the discovery. Accordingly, on October 3, 2014 without the benefit of the discovery from defendant Frankel & Abrams, Mr. Eastland filed Mr. Ohle's Supplemental Brief in Support of his 2255 Motion [see Docket No. 37]. This Supplemental Brief details evidence which is substantial, cumulative and dispositive but was not obtained, pursued and presented by defendant Abrams in Mr. Ohle's trial due to Mr. Abrams' ineffective assistance of counsel. This evidence which defendant Abrams failed to obtain and present at Mr. Ohle's trial proves his actual innocence.

42. Defendant Frankel & Abrams as well as defendant Frankel delayed Mr. Ohle's ability to obtain post-conviction relief and justice following the ineffective assistance of defendant Abrams which was caused by his undisclosed health issues and the admitted "technical shortcomings" of defendant Frankel & Abrams.

## COUNT ONE: BREACH OF CONTRACT

43. The acts, omissions and concealments of the defendants described herein constitute a breach of the oral and written agreements and contracts between

plaintiff and defendants. Plaintiff is entitled to recover from defendants the damages (including, without limitation, past, present and future physical, mental and emotional pain and suffering, mental anguish, humiliation, embarrassment and loss of enjoyment of life) and losses which he has sustained by the defendants' failures to perform their obligations in an amount of damages to be shown at trial, as well as pre- and post-judgment interest and attorneys fees.

## COUNT TWO: PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

44. Plaintiff relied to his detriment on the assurances, representations and promises of the defendants described herein. Plaintiff was injured as a result of his reasonable reliance on the assurances, representations and promises of the defendants described herein and is entitled to an amount of consequential damages shown at trial, as well as pre- and post-judgment interest and attorneys fees.

## COUNT THREE: BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

45. New York law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the state of New York. Defendants breached the covenant of good faith and fair dealing and their duties to plaintiff when they displayed a conscious indifference and reckless disregard of the rights of plaintiff by their acts, omissions and concealments described herein. Plaintiff was injured as a direct result of defendants' breach of their duties and obligations and of the implied covenant of good faith and fair dealing. Defendants exhibited reckless and

conscious disregard of plaintiff's rights which constituted a gross deviation from the standard of care that an ordinary person would exercise under the circumstances, and their reckless conduct reflect a conscious indifference to the consequences of their acts, omissions and concealments without any effort to avoid them. Plaintiff is entitled to actual and punitive damages in an amount to be shown at trial, as well as pre- and post-judgment interest and attorneys fees.

### COUNT FOUR: PROFESSIONAL MALPRACTICE/NEGLIGENCE

46. The acts, omissions and concealments of defendants complained of herein deviated below the standard of care for lawyers practicing in the community. As a direct and proximate result of the defendants' negligent acts, omissions and concealments, plaintiff has been actually damaged in an amount of general and consequential damages to be shown at trial, including, without limitation, mental anguish and suffering, embarrassment, humiliation, loss of enjoyment of life and inconvenience and is entitled to recover same from defendants, plus pre- and post-judgment interest and attorneys fees.

### COUNT FIVE: VICARIOUS LIABILITY/RESPONDENT SUPERIOR

47. The acts, omissions and concealments of the individual defendants described herein were undertaken and committed in the course and scope of their relationship with, or employment by, defendant Frankel & Abrams. These actions were explicitly or implicitly authorized for the benefit, and in furtherance of the business, of defendant Frankel & Abrams which received and retained financial benefits as a

result of the individual defendants' actions. Defendant Frankel & Abrams is liable for defendant Frankel's and defendant Abrams' actions and for the claims and damages stated herein.

48. Plaintiff requests a trial by jury on the claims set forth herein.

WHEREFORE, plaintiff John Brewster Ohle, III, prays that this complaint be duly filed and served on defendants, and that after due proceedings have been had, including a trial by jury, that the court enter judgment in favor of plaintiff and against defendants Frankel & Abrams, Sandor Frankel and the Estate of Stuart E. Abrams, jointly, severally, and solidarily in an amount of actual damages proven at trial; an amount of punitive damages necessary to deter the defendants from such reckless and conscious disregard of plaintiff's rights; pre- and post-judgment interest until the judgment is paid; attorneys fees and all costs of this action; and such other and further relief as may be just and equitable.

Respectfully submitted,

_____, pro se
JOHN B. OHLE, III
1940 Chestnut Avenue
Wilmette, IL 60091
Johnbohle3@yahoo.com

Please serve:

Frankel & Abrams
230 Park Avenue
New York, New York 10169

Sandor Frankel
230 Park Avenue
New York, New York 10169

Estate of Stuart E. Abrams
Through its Administratirix Caroline Dowey
c/o Anthony S. Cannatella
53 Orchard Street
Planadome, New York 11030